1

2

3

4                    **UNITED STATES DISTRICT COURT**

5                        **DISTRICT OF OREGON**

6                        **PORTLAND DIVISION**

7

8   CHARLES W. MILLER,                    )

9                      Plaintiff,         )        **No. 03:10-cv-00376-HU**

10  vs.                                   )
                                          )
11  J.E. THOMAS, Warden, FCI Sheridan; )   **FINDINGS & RECOMMENDATION**
    and DOES 1-3;                         )     **ON MOTION TO DISMISS**
12                                        )
                     Defendants.          )
13                      _____

14

15  Ernest J. Simmons
    651 S.W. Morrison, Suite 1300
16  Portland, OR 97205

17       Attorney for Plaintiff

18

19  S. Amanda Marshall
    United States Attorney
20  Adrian L. Brown
    Assistant United States Attorney
21  1000 S.W. Third Avenue, Suite 600
    Portland, OR 97204-2904
22
         Attorneys for Defendants
23

24

25

26

27

28

1 - FINDINGS & RECOMMENDATION

HUBEL, M.J.:

This matter is before the court on the defendants' motion (Dkt. #41) to dismiss the plaintiff's First Amended Complaint (Dkt. #40). The factual and procedural background of this case are well known to the court, so I only provide a brief summary here. On October 31, 2008, I granted the plaintiff Charles W. Miller's application for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2241. *See Miller v. Thomas*, No. CV-08-789-HU, 2008 WL 4793035 (D. Or. Oct. 31, 2008). On December 20, 2004, Miller was sentenced by the Honorable Robert H. Whaley of the United States District Court for the Eastern District of Washington, to 24 months' imprisonment upon revocation of Miller's federal term of supervised release ("TSR"). *Id.* In a nutshell, I found the Bureau of Prisons ("BOP") acted arbitrarily in failing to designate the place of Miller's imprisonment as a Washington State correctional facility to effect the intent of the sentence imposed by Judge Whaley. Had the BOP acted appropriately, Miller would have been released from prison no later than April 23, 2008. *See id.*; *cf.* Dkt. #2-8 (claiming his release date should have been April 7, 2008). Instead, due to the BOP's error, Miller was not released until November 7, 2008.

On December 4, 2009, Miller filed a notice of tort claim with the BOP alleging "financial earnings, emotional distress and family hardship was [sic] suffered from the . . . wrongful imprisonment that B.O.P. staff knew about, but hindered at every chance." Dkt. #2-8, p. 1. Miller requested $450,000 in damages for "personal injury." *Id.*; Dkt. #2, ¶ 26. When his claim went unanswered for

2 - FINDINGS & RECOMMENDATION

1  "over 90 days," Miller filed the instant action for damages.  *See*
2  Dkt. #2.

3      The Defendants moved to dismiss Miller's original Complaint.
4  On February 22, 2012, I submitted Findings and Recommendation, in
5  which I recommended the motion be granted in part and denied in
6  part. Dkt. #39. Specifically, I found Miller had alleged facts
7  sufficient to excuse the exhaustion requirement of the Prison
8  Litigation Reform Act; none of the Defendants was entitled to
9  qualified immunity; Miller could maintain a *Bivens*-type action[1]
10 without calling into question the sentence imposed, or extending
11 *Bivens* into a new type of action; the Defendant Cheryl Pauley had
12 not been served properly and should be dismissed from the case; and
13 Miller's claim for injunctive relief was moot.  *See id.*

14     On May 23, 2012, District Judge Michael Mosman adopted my
15 recommendations in part.  Dkt. #39.  Where Judge Mosman diverged
16 from my findings was with regard to Warden Thomas's immunity.
17 Judge Mosman found Warden Thomas was entitled to qualified immuni-
18 ty, "to the extent [Miller was] arguing that the warden had a duty
19 to investigate [Miller's] allegation of overdetention based solely
20 on his informal verbal complaint."  *Id.*, p. 6.  Judge Mosman
21 directed Miller to file an amended complaint, if Miller felt he was
22 "able to sufficiently plead some factual basis under *Iqbal/Twombly*[2]

23

24

---

25     [1]Referring to *Bivens v. Six Unknown Named Agents of the*
   *Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29
26 L. Ed. 2d 619 (1971).

27     [2]Referring to *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct.
   1937, 173 L. Ed. 2d 868 (2009); and *Bell Atlantic Corp. v. Twombly*,
28 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

3 - FINDINGS & RECOMMENDATION

1  for imputing the actions of Does 1-3 to Warden Thomas." *Id.*,
2  pp. 6-7.

3      Miller filed his First Amended Complaint on June 13, 2012.
4  Dkt. #40.  In the amended pleading, Miller asserts the following
5  claims for relief:

6  ▸    The defendants violated Miller's fourteenth amendment rights
7       to liberty and equal protection by refusing to release him on
8       time, "with blatant and total disregard for the law [the
9       defendants] are sworn to uphold." Dkt. #40, ¶ 21.

10 ▸    The defendants were deliberately indifferent to Miller's right
11      to have his sentence calculated pursuant to B.O.P. policy.
12      *Id.*, ¶ 23.

13 ▸    The defendants violated Miller's eighth amendment "right
14      against excessive punishment," rendering the defendants
15      "liable under 42 U.S.C. § 1983 because of [Miller's] excessive
16      punishment[.]" *Id.*, ¶ 25.

17 ▸    The defendants "are liable under 42 U.S.C. § 1983 because
18      officials' conduct goes beyond mere negligence." *Id.*, ¶ 26.

19 ▸    The defendants are liable under section 1983 because they kept
20      Miller "in custody beyond term of his commitment[.]" *Id.*,
21      ¶ 28.

22 ▸    The defendants failed or refused to act, "or took only
23      ineffectual action," despite knowing or having reason to know
24      Miller's sentence had been calculated incorrectly. *Id.*,
25      ¶¶ 29-31.

26 ▸    The defendants "violated Miller's right to redress . . . under
27      the First Amendment to the United States Constitution." *Id.*,
28      ¶ 33.

4 - FINDINGS & RECOMMENDATION

‣   The defendants' actions "inflicted emotional distress on . . . Miller." *Id.*, ¶ 35.

For all of these alleged wrongs, Miller seeks compensatory damages ("including economic and non-economic damages") in the amount of $450,000; punitive damages; and his attorney's fees and costs. *Id.*, p. 9.  The defendants have filed a motion to dismiss Miller's Amended Complaint, and a supporting memorandum.  Dkt. ##41 & 42.

**1.  *Motion to dismiss as to Warden Thomas***

Warden Thomas argues Miller's new allegations against him, even if taken as true, fail to state a valid claim against him. Thomas construes Miller's allegations as an attempt to hold Thomas vicariously liable for the actions of Does 1-3.   He notes "'vicarious liability is inapplicable to *Bivens* and § 1983 suits,'" and Miller has failed to plead that Thomas, himself, violated the Constitution.  Dkt. #42, p. 4 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948, 173 L. Ed. 2d 868 (2009)).  Thomas further argues that even if he knew Miller had lodged written complaints about his sentence calculation, that knowledge alone is not enough to impose *Bivens* liability on him.  *Id.* (citing *Iqbal*, 556 U.S. at 677, 129 s. Ct. at 1949: "In the context of determining whether there is a violation of clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose *Bivens* liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities.").

1    In response, Miller agrees "that *respondeat superior* does not
2 trigger *Bivens* claim liability[,]" but he asserts his *Bivens* claim
3 is not based on a *respondeat superior* analysis.  Dkt. #43, p. 1.
4 Miller's entire argument is set forth in two sentences, to-wit:
5 "Here, plaintiff expects to show, after fact discovery, that defen-
6 dant Thomas was personally involved in the unconstitutional
7 conduct.  This is more than awareness; it is personal and individu-
8 al participation and will give rise to *Bivens* liability."  *Id.*,
9 p. 2.

10    Thomas argues Miller is seeking to engage in a fishing expedi-
11 tion in the hope that he will uncover some facts that will
12 establish Thomas's individual liability.  Dkt. #44, p. 2.  However,
13 even the liberal pleading standard established by Federal Rule of
14 Civil Procedure 8 "demands more than an unadorned, the-defendant-
15 unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678, 129 S.
16 Ct. at 1949.  The Supreme Court expounded further on Rule 8's
17 requirements, holding as follows:

18        A pleading that offers "labels and conclu-
19        sions" or "a formulaic recitation of the
          elements of a cause of action will not do."
20        . . . Nor does a complaint suffice if it ten-
          ders "naked assertion[s]" devoid of "further
          factual enhancement."  [Citations omitted.]
21
22        To survive a motion to dismiss, a com-
          plaint must contain sufficient factual matter,
23        accepted as true, to "state a claim to relief
          that is plausible on its face." . . . A claim
24        has facial plausibility when the plaintiff
          pleads factual content that allows the court
25        to draw the reasonable inference that the
          defendant is liable for the misconduct
26        alleged. . . . The plausibility standard is
          not akin to a "probability requirement," but
27        it asks for more than a sheer possibility that
          a defendant has acted unlawfully. . . . Where
28        a complaint pleads facts that are "merely
          consistent with" a defendant's liability, it

1               "stops short of the line between possibility
              and plausibility of 'entitlement to relief.'"
2               [Citations omitted.]

3 *Id.* The *Iqbal* Court further noted that while "Rule 8 marks a

4 notable and generous departure from the hyper-technical, code-

5 pleading regime of a prior era, . . . it does not unlock the doors

6 of discovery for a plaintiff armed with nothing more than

7 conclusions." *Id.*, 556 U.S. at 678-79, 129 S. Ct. at 1950.

8     Miller has failed to allege a sufficient factual basis to

9 support liability against Warden Thomas. Miller's allegation that,

10 "[u]pon information and belief, defendant Thomas knew around the

11 summer of 2008 that plaintiff Miller had made written objections to

12 the incorrect sentence, using forms and the system for submission

13 of the forms as set up by the prison," Dkt. #40, p. 5, does not

14 come close to alleging facts "that would allow a court to draw a

15 reasonable inference that a reasonable supervisor in [Thomas's

16 position] would have found the[] conduct [of Does 1-3] to be

17 clearly unlawful." *Chavez v. United States*, 583 F.3d 1102, 1110

18 (9th Cir. 2012) (refusing to impute liability to supervisors who

19 allegedly allowed subordinate Border Patrol officers to stop

20 vehicles in violation of fourth amendment); *see* Dkt. #39, at p. 6

21 (finding "it was not 'sufficiently clear' that Warden Thomas had a

22 duty to investigate [Miller's] claim such that a reasonable officer

23 would understand that his failure to do so in the circumstances

24 would have violated [Miller's] constitutional rights.").

25     Miller's bare-bones allegation that, upon Miller's "informa-

26 tion and belief," Thomas knew Miller was contesting the calculation

27 of his sentence and failed to take appropriate action, is not

28 enough, under *Iqbal*, to impute the liability of Does 1-3 to Warden

7 - FINDINGS & RECOMMENDATION

1  Thomas.   Accordingly,  Warden  Thomas  is  entitled  to  qualified

2  immunity in this case.

3

4  *2.  Motion to dismiss as to Does 1-3*

5      The  defendants  also  argue  Miller  has  failed  to  allege

6  sufficient facts to maintain an action against Does 1-3.  Dkt. #42,

7  pp. 3, 5-6.  The defendants assert Miller has failed to provide

8  "identifying  information  which  would  allow  the  United  States  an

9  opportunity through which discovery would reveal their identifies

10 [sic]."  Dkt. #42.  The defendants rely on *Gillespie v. Civiletti*,

11 629 F.2d 637 (9th Cir. 1980), where the court held:

12              As a general rule, the use of "John Doe"
            to identify a defendant is not favored. . . .
13         However,  situations  arise,  such  as  the
            present,  where  the  identity  of  alleged  defen-
14         dants  will  not  be  known  prior  to  the  filing  of
            a   complaint.    In   such  circumstances,  the
15         plaintiff  should  be  given  an  opportunity
            through  discovery  to  identify  the  unknown
16         defendants, unless it is clear that discovery
            would  not  uncover  the  identities,  or  that  the
17         complaint  would  be  dismissed  on  other  grounds.

18 *Gillespie*, 629 F.3d at 642.  Here, the defendants argue "the

19 complaint  would  be  dismissed  on  other  grounds,"  because  Miller

20 "received  redress  through  his  prior  Habeas  Corpus  Petition  filed

21 with this Court."  Dkt. #42, p. 5.  The defendants assert that

22 because an alternative remedy was available, and was granted, "no

23 further  inquiry  should  be  afforded  [Miller],  even  where  Congress

24 has  not  provided  for  monetary  damages  through  the  Habeas  process."

25 *Id.*, pp. 5-6 (citing *Mirmehdi v. United States*, 662 F.3d 1073, 1079

26 (9th Cir. 2011) "(holding that a *Bivens* remedy did not exist for

27 unlawful detention of aliens)").

28

8 - FINDINGS & RECOMMENDATION

1    Miller only response to this argument is his assertion that he

2    "is not able to plead some allegations beyond knowledge and

3    belief." Dkt. #43, p. 1.

4    I addressed this argument, to some extent, in my prior

5    Findings and Recommendation, noting:

> The courts have recognized the viability of a *Bivens* action for damages for extending incarceration beyond the proper release date; i.e., where it is not the sentence itself, but the *calculation* of the sentence thereafter, that is declared invalid. *See Whitehurst v. Jones*, 278 Fed. Appx. 362, 363 (5th Cir. 2008) (holding plaintiff had to exhaust habeas remedies before pursuing *Bivens* claim; *Bivens* action does not accrue until order is entered invalidating detention past accurately-calculated release date); *Clemente v. Allen*, 120 F.3d 703, 705 (7th Cir. 1997) (once plaintiff "succeeds in his habeas petition challenging the computation and duration of his sentence," a *Bivens* action may accrue); *Alexander v. Perrill*, 916 F.2d 1392 (9th Cir. 1990) (*Bivens* action for damages due to miscalculation of sentence; qualified immunity denied); *cf.*, in the context of 1983 actions, *Russell v. Lazar*, 300 F. Supp. 2d 716 (E.D. Wis. 2004) (for purposes of motion to dismiss, prisoner stated claim under § 1983 for violation of eighth and fourteenth amendment rights; qualified immunity denied); *Hardage v. Francke*, 889 F.2d 1094 (Table) (9th Cir. 1989) (recognizing that once habeas relief has been granted, prisoner whose release date was miscalculated could have claim for damages).

21    Dkt. #36, pp. 16-17. The defendants argue the fact that Miller

22    obtained a prior remedy through his *habeas* petition forecloses his

23    ability to maintain the current action. The above-cited cases

24    illustrate that exactly the opposite is true; indeed, Miller had to

25    succeed in his *habeas* action before his *Bivens* action could accrue.

26    Miller should be allowed to proceed with discovery to attempt

27    to determine the identities of Does 1-3. *See Gillespie*, 629 F.3d

28    at 642.

9 - FINDINGS & RECOMMENDATION

*3.    Motion to dismiss any Tort Claims Act claim*

Miller has abandoned any Federal Tort Claims Act claim.  Dkt. #43, p. 2.  Therefore, to the extent he may have alluded to any such claim in his Amended Complaint, as the defendants suggest, the claim should be dismissed.


*CONCLUSION*

For the reasons discussed above, I recommend Warden Thomas's motion to dismiss the action against him on the basis of qualified immunity be **granted.**  I recommend the motion to dismiss Does 1-3 be **denied.**  And I recommend any claim against the United States under the Federal Tort Claims Act be **dismissed.**


*SCHEDULING ORDER*

These Findings and Recommendations will be referred to a district judge.  Objections, if any, are due by **February 11, 2013.** If no objections are filed, then the Findings and Recommendations will go under advisement on that date.  If objections are filed, then any response is due by **February 28, 2013.**  By the earlier of the response due date or the date a response is filed, the Findings and Recommendations will go under advisement.

IT IS SO ORDERED.

Dated this 22nd day of January, 2013.


/s/ Dennis J. Hubel

_____
Dennis James Hubel
Unites States Magistrate Judge

10 - FINDINGS & RECOMMENDATION