**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| CHARLES W. MILLER, ) | |
| ) | |
| Plaintiff, ) | **No. 03:10-cv-00376-HU** |
| ) | |
| vs. ) | |
| ) | |
| ROBERT BUCKHOLTZ, WILLIAM COOLEY, ) | **FINDINGS & RECOMMENDATION** |
| MARGARET KALLUNKI, DEBRA POTTER, ) | **ON MOTION TO DISMISS** |
| and DOES 1-3, ) | **SECOND AMENDED COMPLAINT** |
| ) | |
| Defendants. ) | |

Ernest J. Simmons
651 S.W. Morrison, Suite 1300
Portland, OR 97205

    Attorney for Plaintiff

S. Amanda Marshall
United States Attorney
Adrian L. Brown
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

    Attorneys for Defendants

1 - FINDINGS & RECOMMENDATION

HUBEL, M.J.:

For the third time, this matter is before the court on a motion to dismiss (Dkt. #62), this time directed to the plaintiff's Second Amended Complaint (Dkt. #52). In my Findings and Recommendation on the defendants' motion to dismiss the plaintiff's First Amended Complaint, I summarized the procedural history of the case as follows:

> On October 31, 2008, I granted the plaintiff Charles W. Miller's application for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2241. *See Miller v. Thomas*, No. CV-08-789-HU, 2008 WL 4793035 (D. Or. Oct. 31, 2008). On December 20, 2004, Miller was sentenced by the Honorable Robert H. Whaley of the United States District Court for the Eastern District of Washington, to 24 months' imprisonment upon revocation of Miller's federal term of supervised release ("TSR"). *Id.* In a nutshell, I found the Bureau of Prisons ("BOP") acted arbitrarily in failing to designate the place of Miller's imprisonment as a Washington State correctional facility to effect the intent of the sentence imposed by Judge Whaley. Had the BOP acted appropriately, Miller would have been released from prison no later than April 23, 2008. *See id.; cf.* Dkt. #2-8 (claiming his release date should have been April 7, 2008). Instead, due to the BOP's error, Miller was not released until November 7, 2008.
> On December 4, 2009, Miller filed a notice of tort claim with the BOP alleging "financial earnings, emotional distress and family hardship was [sic] suffered from the . . . wrongful imprisonment that B.O.P. staff knew about, but hindered at every chance." Dkt. #2-8, p. 1. Miller requested $450,000 in damages for "personal injury." *Id.;* Dkt. #2, ¶ 26. When his claim went unanswered for "over 90 days," Miller filed the instant action for damages. *See* Dkt. #2.
> The Defendants moved to dismiss Miller's original Complaint. On February 22, 2012, I submitted Findings and Recommendation, in which I recommended the motion be granted in part and denied in part. Dkt. #39. Specifically, I found Miller had alleged facts sufficient to excuse the exhaustion

2 - FINDINGS & RECOMMENDATION

requirement of the Prison Litigation Reform Act; none of the Defendants was entitled to qualified immunity; Miller could maintain a *Bivens*-type action FN1/ without calling into question the sentence imposed, or extending *Bivens* into a new type of action; the Defendant Cheryl Pauley had not been served properly and should be dismissed from the case; and Miller's claim for injunctive relief was moot. *See id.*

> FN1/ Referring to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971).

On May 23, 2012, District Judge Michael Mosman adopted my recommendations in part. Dkt. #39. Where Judge Mosman diverged from my findings was with regard to Warden Thomas's immunity. Judge Mosman found Warden Thomas was entitled to qualified immunity, "to the extent [Miller was] arguing that the warden had a duty to investigate [Miller's] allegation of overdetention based solely on his informal verbal complaint." *Id.*, p. 6. Judge Mosman directed Miller to file an amended complaint, if Miller felt he was "able to sufficiently plead some factual basis under *Iqbal/Twombly* FN2/ for imputing the actions of Does 1-3 to Warden Thomas." *Id.*, pp. 6-7.

> FN2/ Referring to *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

Dkt. #45, pp. 2-4.

In response to Judge Mosman's order, Miller filed a First Amended Complaint on June 13, 2012. Dkt. #40. The defendants moved to dismiss. I found Miller had failed to allege a sufficient factual basis to support liability against Warden Thomas, and also that Warden Thomas was entitled to qualified immunity. With regard to the defendants "Does 1-3," I found Miller had failed to provide enough information to allow the Government to identify the individuals who were the objects of Miller's claims. I recommended

3 - FINDINGS & RECOMMENDATION

that Miller be allowed to conduct discovery to attempt to determine the identities of Does 1-3. I further found Miller had abandoned any claim under the Federal Tort Claims Act, and therefore recommended any such claim be dismissed. Dkt. #45, pp.5-10. Judge Mosman adopted my recommendations as his own. Dkt. #47.

Thereafter, the court set deadlines for discovery to proceed. *See* Dkt. #50. On April 10, 2013, Miller propounded two interrogatories to the Government, one of which asked the Government to "[i]dentify all prison employees that worked from March 2008 through July 2008 at the Federal Detention Center, Sheridan, Oregon or at the Federal Correctional Institution, Sheridan, Oregon," including each such individuals' "full name, positions held, dates and shifts worked, [and] last known address and telephone number." Dkt. #69-3, ECF p. 2.

The Government did not object to the interrogatory as overly broad, did not file a motion for protective order, and apparently did not confer with Miller's counsel to attempt to narrow the scope of the interrogatory. Instead, the Government unilaterally narrowed the scope of the interrogatory based on Miller's allegations in his original complaint and first amended complaint. *See* Dkt. #63, ECF p. 2; Dkt. #64-1, ECF p. 1; *cf.* Dkt. #68, ECF p. 2. In Miller's original complaint, which he filed *pro se*, Miller alleged, upon his "best knowledge and belief," that Does 1-3 all were Oregon residents, subject to this court's jurisdiction. He alleged Doe 1 "Worked in the F.C.I. Sheridan Records office and he is responsible for the enforcement of prisoner's [sic] judgment and sentences, and timely release of prisoners in his custody and care." Dkt. #1, ¶ 10. He alleged Doe 2 "works in the F.C.I. Sheridan Records

4 - FINDINGS & RECOMMENDATION

office and she is responsible for the enforcement of prisoner's [sic] Judgment and Sentences, [and] the calculation and computation of prisoners [sic] in her custody and care." *Id.*, ¶ 11. He alleged Doe 3 "works in the F.C.I. Sheridan Records Office and she is responsible for the enforcement of prisoner's [sic] Judgment and Sentences, the calculation and computation of prisoner sentences, and timely release of prisoners in her custody and care." *Id.*, ¶ 12.

In his First Amended Complaint, filed with the assistance of counsel, Miller alleged, "[o]n information and belief," that Does 1-3 "work in the F.C.I. Sheridan and are responsible for the calculation and enforcement of prisoners['] sentences, and timely release of prisoners in their custody and care." Dkt. #40, ¶ 1. He further alleged that "[e]very week from May of 2008, until the summer of 2008, [he] approached Does 1-3 in the F.C.I. Sheridan Records Office trying to resolve the wrongly calculated release date." *Id.*, ¶ 9.

Thus, in Miller's original Complaint, he clearly alleges Does 1-3 work in the F.C.I. Sheridan Records Office. In his First Amended Complaint, he alleges Does 1-3 work at the facility, and he indicates he approached Does 1-3 in the Records Office. Based on these allegations, the Government responded to Miller's interrogatory with the names of the four individuals - two men and two women – who staffed the Records Office at FCI Sheridan between March 2008 and September 2008. Dkt. #64-1. Although the Government's response encompassed a broader time period than specified in Miller's interrogatory, the Government unilaterally narrowed the scope of the interrogatory, which requested the names of *all*

5 - FINDINGS & RECOMMENDATION

employees at the facility during the specified time period. As a result of the narrowed response, Miller indicates, in his response to the current motion to dismiss, that he "will pursue discovery, including filing motions to compel if necessary." Dkt. #69, ECF p. 1.

Miller filed his Second Amended Complaint on June 17, 2013, naming as defendants the four individuals whose names were supplied to him by the Government. Miller effected timely service on three of the individuals - Buckholtz, Kallunki, and Potter. The defendant William Cooley was not served, and the Government indicates Cooley is deceased. Therefore, William Cooley should be dismissed from the case.

In addition to Buckholtz, Kallunki, and Potter, Miller once again named "Does 1-3" as defendants. As noted above, Miller proposed to do further discovery in an attempt to identify additional individuals who allegedly violated his rights, substituting them for "Does 1-3." The Government objected to Miller's request for further discovery. The undersigned overruled that objection, and ordered that the depositions of Buckholtz, Kallunki, and Potter be taken. Those depositions have been completed. However, the Government acknowledges that it never responded formally to Miller's discovery requests.

Among those discovery requests were requests for admissions. At oral argument on Miller's motion to compel discovery (Dkt. #80), Miller's counsel argued the requested admissions should be deemed admitted due to the Government's failure to respond, pursuant to Federal Rule of Civil Procedure 36(3). The Government requested the opportunity to respond to Miller's argument, which the

6 - FINDINGS & RECOMMENDATION

undersigned granted. I set deadlines for the Government to respond fully to Miller's outstanding discovery requests, and for the parties to brief the issue of whether the Government's failure to respond to Miller's requests for admissions should result in those matters being deemed admitted. *See* Dkt. #88 (Minute Order). Thereafter, at oral argument on April 30, 2013, I granted Miller's motion to deem the requests for admissions admitted as to the United States generally, for lack of a timely response. *See* Dkt. #92. I reserved ruling on the motion with respect to the Doe defendants, as discussed further below and in the order, Dkt. #92.

Returning to the Government's motion to dismiss Miller's Second Amended Complaint, although the court previously found Miller had abandoned any claim under the Federal Tort Claims Act, he has once again alleged this court's jurisdiction under the Act. *See* Dkt. #52, ¶ 2. To the extent Miller's pleading can be construed as alleging a claim under the Act, such a claim should be dismissed.

The defendants argue Miller's Second Amended Complaint should be dismissed in full because Miller has failed to state a claim against the three named defendants for which relief can be granted, and in any event, because all three of the defendants are entitled to qualified immunity.* Dkt. #63.

Miller's allegations against the three named defendants are all made against the defendants as a group; he makes no specific

---

*The defendants also argue Miller has failed exhaust his statutorily-mandated administrative remedies against these three defendants. Because the court finds the defendants' motion should be granted on other grounds, the court does not address this argument.

7 - FINDINGS & RECOMMENDATION

allegations against any individual defendant. The court afforded Miller ample opportunity to conduct discovery, including taking the depositions of the three named defendants. Despite that discovery, Miller's allegations against this group of defendants is no more specific than when he asserted claims against the unnamed "Does 1-3."

The United States Supreme Court has made it clear that in suits brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), and 42 U.S.C. § 1983, "a plaintiff must plead that *each* Government-official defendant, through the official's *own individual actions*, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948, 173 L. Ed. 2d 868 (2009) (emphasis added); *see, e.g., Jones v. Williams*, 297 F.3d 930, 934-35 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983, there must be a showing of personal participation in the alleged rights deprivation[.]") (citing, *inter alia*, *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (same)). Miller has failed to meet this basic pleading standard. He failed to make allegations regarding any individual defendant's actions. As a result, Miller has failed to state a claim for which relief may be granted, and his Second Amended Complaint should be dismissed.

Moreover, the currently-named defendants are entitled to qualified immunity. Both the undersigned and Judge Mosman discussed the standards for qualified immunity in connection with motions to dismiss Miller's previous complaints. *See* Dkt. ##36, 39. As stated succinctly by Judge Mosman, "the issue as to

8 - FINDINGS & RECOMMENDATION

qualified immunity in this case is whether defendants would have understood that they were violating plaintiff's constitutional rights by failing to respond to his complaints that his sentence was miscalculated by performing an investigation." Dkt. #39, ECF p. 4 (citing *Alston v. Read*, 663 F.3d 1094 (9th Cir. 2011)). As the Ninth Circuit Court of Appeals has held, "[I]f a prisoner raises factual questions about the calculation of his sentence, *and the prison officials do nothing, or only go through the bare form of a response with no investigation* - in one court's formulation, if they 'sit on [their] duff and [don't] do anything' - then the effective denial of any meaningful opportunity to be heard can amount to a denial of due process." *Davis v. Oregon*, slip op., 2010 WL 3259924, at *3 (D. Or. Aug. 16, 2010) (Mosman, J.) (emphasis added; quoting *Alexander v. Perrill*, 916 F.2d 1392, 1395 (9th Cir. 1990) ("Prison officials who are under a duty to investigate claims of computational error in the calculation of prison sentences may be liable for their failure to do so when a reasonable request is made.")). A failure to investigate, then, could provide evidence of the prison officials' state of mind. *See id.*

Here, however, Miller has specifically alleged that an investigation *was* conducted, and it was the Bureau of Prisons, not any of the named defendants, that miscalculated his sentence. Miller alleges, "In or around the summer of 2008, Miller's dogged persistence caused the Bureau of Prisons (B.O.P.) to make an official sentence computation analysis in the B.O.P.'s Designation and Sentence Computation Center in Grand Prairie, Texas. *That office incorrectly calculated the sentence. . . .*" Dkt. #52, ¶ 10

9 - FINDINGS & RECOMMENDATION

(emphasis added).  There was (and is) no clearly-established law that would have indicated to the currently named defendants that they would be violating Miller's rights by relying on the BOP's sentencing computation.  *See Ashcroft v. al-Kidd*, ___ U.S. ___, ___, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)) (standards for qualified immunity); *see also Butz v. Economou*, 438 U.S. 478, 507, 98 S. Ct. 2894, 2911, 57 L. Ed. 2d 895 (1978) ("Federal officials will not be liable for mere mistakes in judgment, whether the mistake is one of fact or one of law.").  Accordingly, the defendants are entitled to qualified immunity.

It appears that, through the additional discovery, Miller has been able to identify the individuals with the Bureau of Prisons who miscalculated his sentence.  Whether he can allege facts to state a viable claim against those individuals remains to be seen.  Miller should be afforded another opportunity to amend his Complaint to name the appropriate parties defendant, and allege his claim against them.  Therefore, although the undersigned finds Miller's Second Amended Complaint should be dismissed as to the defendants Buckholtz, Cooley, Kallunki, and Potter, Miller should be allowed one last chance to amend his pleading to state, in good faith, viable claims against defendants from the BOP that he actually names.  For this reason, the undersigned has reserved ruling on Miller's request to have his requests for admission deemed admitted with regard to these Doe defendants, "until such time as those defendants are named and have an opportunity to take a position on the requests for admissions."  Dkt. #92, p. 3.

10 - FINDINGS & RECOMMENDATION

***CONCLUSION***

For the reasons discussed above, the undersigned recommends the defendants' motion to dismiss Miller's Second Amended Complaint be **granted**, but the dismissal be **without prejudice**. The defendant William Cooley, however, should be **dismissed with prejudice**, as he apparently is deceased.

***SCHEDULING ORDER***

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due by **June 2, 2014**. If no objections are filed, then the Findings and Recommendations will go under advisement on that date. If objections are filed, then any response is due by the earlier of 14 days from the date objections are filed, or **June 19, 2014**. By the earlier of the response due date or the date a response is filed, the Findings and Recommendations will go under advisement.

IT IS SO ORDERED.

Dated this 13th day of May, 2014.

/s/ Dennis J. Hubel

_____
Dennis James Hubel
Unites States Magistrate Judge

11 - FINDINGS & RECOMMENDATION